TROY LAW, PLLC
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

QIAN WANG
  a/k/a Sarah Wang
TIANDE WANG
LU YANG
YA XU, and
ZHANWEN CHI
*on their own behalf and on behalf of others similarly situated*

                       Plaintiffs,

                v.

HEBEI TIANKAI FOUNDATION ENGINEERING
TECHNICAL CO. LTD
  d/b/a Hebei Tiankai Wood & Land Construction;
YINGJIE LI
  a/k/a Ying Jie Li, and
WEI WANG
  a/k/a Maggie Wang

                  Defendants.

------------------------------------------------------------------x

**Case No. 21-cv-07194**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**<u>COMPLAINT</u>**

**DEMAND FOR JURY TRIAL**

       Plaintiffs QIAN WANG a/k/a Sarah Wang; TIANDE WANG; LU YANG; YA XU; and

ZHANWEN CHI (hereinafter collectively referred to as Plaintiffs), on behalf of themselves and

others similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this

complaint against Defendants HEBEI TIANKAI FOUNDATION ENGINEERING TECHNICAL

CO. LTD d/b/a Hebei Tiankai Wood & Land Construction, YINGJIE LI a/k/a Ying Jie Li, and

WEI WANG a/k/a Maggie Wang, and allege as follows:

**<u>INTRODUCTION</u>**

1.      Plaintiffs brings this action on behalf of themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and New York Labor Law ("NYLL"), arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) unreimbursed expenses, (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

4.      Plaintiffs further allege pursuant to NYLL § 650 *et seq*. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) unreimbursed expenses, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent

under NYLL § 190 *et seq.*, § 650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

5.      Plaintiffs further bring this action on behalf of themselves and other similarly situated employees against Defendants for violations of Section 215, subsection (a), paragraph (3) of the FLSA and of Section 215, subsection 1, paragraph (a), subparagraph (iii) of the NYLL, arising from Defendants' willful, malicious, and unlawful retaliation against Plaintiffs for engaging in protected activity.

6.      Plaintiffs allege pursuant to Section 216, subsection (b) of the FLSA that they are entitled to recover from the Defendants: (1) lost wages, (2) liquidated damages equal to lost wages, (3) prejudgment and post judgment interest, (4) reasonable attorneys' fees and costs, (5) injunctive relief, (6) a declaration that the practices complained of are unlawful, and (7) any such other and further legal and equitable relief as will effectuate the purposes of Section 215(a)(3) of the FLSA.

7.      Plaintiffs further allege pursuant to Section 215, subsection 2, paragraph (a) of the NYLL that they are entitled to recover from the Defendants: (1) lost wages, (2) liquidated damages equal to lost wages but not more than $20,000.00, (3) prejudgment and post-judgment interest, (4) reasonable attorneys' fees and costs, (5) injunctive relief, (6) a declaration that the practices complained of are unlawful, and (7) any such other and further legal and equitable relief as will effectuate the purposes of Section 215.1(a)(iii) of the NYLL.

8.      Notice of the commencement of this action was served on the Attorney General of the State of New York concurrently with the commencement of this action, pursuant to Section 215, subsection 2, paragraph (a) of the NYLL.

## <u>JURISDICTION AND VENUE</u>

9.    This Court has subject-matter jurisdiction over this controversy under Section 216(b) of the FLSA and Section 1331 of Title 28 of the United States Code.

10.    This Court has supplemental jurisdiction over Plaintiffs' state-law claims under Section 1367, Subsection (a) of Title 28 of the United States Code.

11.    Venue is proper in the United States District Court for the Eastern District of New York pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conducted business in the Eastern District of New York, and because the acts and omissions giving rise to the claims alleged herein took place in this District.

## THE PARTIES

### PLAINTIFFS

12.    From on or around June 01, 2016 to December 02, 2020, Plaintiff QIAN WANG a/k/a Sarah Wang was employed by Defendants to work as a Billing, payroll and Sanitation Worker at 142-04 Bayside Avenue, Suite 7L, Flushing, NY 11354

13.    From on or about November 2015 through March 2017, and again from April 2019 through December 02, 2021, Plaintiff TIANDE WANG was employed by Defendants to work as a Commuter Van Driver.

14.    From on or about May or June of 2017 through March of 2021, Plaintiff LU YANG was employed by Defendants to work as a Commuter Van Driver.

15.    From on or about 2017 through March of 2021, Plaintiff YA XU was employed by Defendants to work as a Commuter Van Driver and also as marketing of Kirin Transportation.

16.    From on or about November 01, 2016 to March 31, 2019, Plaintiff ZHANWEN CHI was employed by Defendants to work as a Commuter Van Driver.

### DEFENDANTS AND NON-DEFENDANT PARTIES

### *Corporate/Entity Defendants*

17.    Corporate Defendant HEBEI TIANKAI FOUNDATION ENGINEERING TECHNICAL CO LTD d/b/a Hebei Tiankai Wood & Land Construction is a foreign Chinese company that is established on February 20, 2008, and does busiess at 145 TanGu Street, HuaiAnDong Road Yuhua District, Shijiazhuang City, Hebei Province 050000, People's Republic of China.

18.    Corporate Defendant HEBEI TIANKAI FOUNDATION ENGINEERING TECHNICAL CO LTD d/b/a Hebei Tiankai Wood & Land Construction has the registration number of 911301006720623780 on its Enterprise Business License in China.

### *Owner/Operator Defendants*

19.    The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

20.    Upon information and belief, Individual Defendant YINGJIE LI a/k/a Ying Jie Li along with Individual Non-Defendant QIUXIANG SHI a/k/a Qiu Xiang Shi are the sole owners, officers, and managers of Corporate Defendant HEBEI TIANKAI FOUNDATION ENGINEERING TECHNICAL CO LTD d/b/a Hebei Tiankai Wood & Land Construction.

21.    Upon information and belief, YINGJIE LI a/k/a Ying Jie Li is the legal representative of Corporate Defendants as appeared on its Enterprise Business License.

22.    YINGJIE LI a/k/a Ying Jie Li known as Big Boss to Plaintiffs (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records

at Corporate Defendants HEBEI TIANKAI FOUNDATION ENGINEERING TECHNICAL CO LTD d/b/a Hebei Tiankai Wood & Land Construction and Kirin Transportation.

23.     YINGJIE LI a/k/a Ying Jie Li acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Corporate Defendant and KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

24.     WEI WANG a/k/a Maggie Wang known as the CEO and Manager to Plaintiffs and CEO of KIRIN TRANSPORTATION INC d/b/a Kirin Transportation from in or around April 10, 2018 to March 28, 2019, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Kirin Transportation.

25.     Specifically, from in or about April 10, 2018 to March 27, 2019, WEI WANG a/k/a Maggie Wang calculated the pay to be distributed to Kirin Transportation employees.

26.     On October 09, 2018, WEI WANG a/k/a Maggie Wang texted Plaintiff QIAN WANG a/k/a Sarah Wang on WeChat, representing that she is the newly appointed CEO of Kirin Transportation and ask Plaintiff QIAN WANG a/k/a Sarah Wang along with her Kirin's coworkers to attend an internal conference scheduling on October 11, 2018.

27.     On October 11, 2018, the internal conference was held as scheduled, during which WEI WANG a/k/a Maggie Wang listen to reports from Plaintiff QIAN WANG a/k/a Sarah Wang and her coworkers pertaining to their working hours and payments.

28.     At the end of meeting, WEI WANG a/k/a Maggie Wang represented that she would report and make recommendation of raises and promotion to QIUXIANG SHI a/k/a Qiu Xiang Shi for her ultimate decision, in light of the information she acquired during the meeting.

29.    WEI WANG a/k/a Maggie Wang acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

### Corporate Non- Defendants

30.    KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation is a domestic business corporation organized under the laws of the State of New York with a principal address at 142-04 Bayside Ave., Suite 7L, Flushing, NY 11354.

31.    KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

32.    KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation purchased and handled goods moved in interstate commerce.

### Individual Non-Defendants

33.    QIANG CHEN a/k/a Frank Chen known as the Boss to Plaintiffs and CEO of KIRIN TRANSPORTATION INC d/b/a Kirin Transportation (1) had the power to hire and fire employees, (2) supervised and controlled employees work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at KIRIN TRANSPRORTATION INC d/b/a Kirin Transportation.

34.    QIANG CHEN a/k/a Frank Chen hired Plaintiff QIAN WANG a/k/a Sarah Wang.

35.    QIANG CHEN a/k/a Frank Chen actually fired Individual Non-Defendant Marriana Yuhua Song a/k/a Nancy Song in or around 2018.

36.    QIANG CHEN a/k/a Frank Chen calculated the pay to be distributed to workers at

Kirin Transportation.

37.    QIANG CHEN a/k/a Frank Chen acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

38.    MARRIANA YUHUA SONG a/k/a Nancy Song known as the CEO and Manager to Plaintiffs and CEO of KIRIN TRANSPORTATION INC d/b/a Kirin Transportation since March 28, 2019 until present, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at KIRIN TRANSPORTATION INC d/b/a Kirin Transportation.

39.    MARRIANA YUHUA SONG a/k/a Nancy Song actually fired Plaintiff QIAN WANG a/k/a Sarah Wang; TIANDE WANG; LU YANG; and YA XU.

40.    Since March 28, 2019 until present, MARRIANA YUHUA SONG a/k/a Nancy Song calculated the pay to be distributed to Kirin Transportation employees.

41.    MARRIANA YUHUA SONG a/k/a Nancy Song acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

42.    QIUXIANG SHI a/k/a Qiu Xiang Shi known as Big Boss to Plaintiffs, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Corporate Defendant and Kirin Transportation.

43.     QIUXIANG SHI a/k/a Qiu Xiang Shi fired receptionist MARK in March 2020.

44.     QIUXIANG SHI a/k/a Qiu Xiang Shi has the ultiamte decision-making power, and either WEI WANG a/k/a Maggie Wang or MARRIANA YUHUA SONG a/k/a Nancy Song defer to her decision.

45.     QIUXIANG SHI a/k/a Qiu Xiang Shi acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation.

## **STATEMENT OF FACTS**

### **Corporate Defendant and Non-Corporate Defendant Constitute as a Single Enterprise**

46.     Corporate Defendant and Corporate Non-Defendants Kirin Transportation operate as a transport company at Corporate Non-Defendants' address in the State of New York.

47.     Corporate Defendant and Corporate Non-Defendant are established as parent-subsidiary corporation. Corporate Defendant is the parent company to Corporate Non-Defendants and all operations between Corporate Non-Defendants as subsidiary and other companies are on behalf of Corporate Defendants.

48.     At all relevant times, Corporate Defendants and Corporate Non-Defendants were, and continue to be, a single enterprise and employer with a high degree of interrelated and unified operation, common ownership in the persons of Qiuxiang Shi a/k/a Qiu Xiang Shi and Yingjie Li a/k/a Ying Jie Li; Wei Wang a/k/a Maggie Wang; Qiang Chen a/k/a Frank Chen and Marriana Yuhua Song a/k/a Nancy Song, common management in the persons of Qiuxiang Shi a/k/a Qiu Xiang Shi and Yingjie Li a/k/a Ying Jie Li; Wei Wang a/k/a Maggie Wang; Qiang Chen a/k/a Frank Chen and Marriana Yuhua Song a/k/a Nancy Song, centralized control of labor relations

conducted by Qiuxiang Shi a/k/a Qiu Xiang Shi and Yingjie Li a/k/a Ying Jie Li; Wei Wang a/k/a Maggie Wang; Qiang Chen a/k/a Frank Chen and Marriana Yuhua Song a/k/a Nancy Song, common control by Qiuxiang Shi a/k/a Qiu Xiang Shi and Yingjie Li a/k/a Ying Jie Li; Wei Wang a/k/a Maggie Wang; Qiang Chen a/k/a Frank Chen and Marriana Yuhua Song a/k/a Nancy Song, common business purpose and interrelated business goals.

49.    Specifically, in or around November of 2017, Qiuxiang Shi a/k/a Qiu Xiang Shi and Individual Defendant Yingjie Li a/k/a Ying Jie Li met with Qiang Chen a/k/a Frank Chen at Kirin Transportation's headquarters in Flushing, Queens, then of that time the sole owner/shareholder, sole director and officer of Corporate Non-Defendant.

50.    During the meeting among Qiuxiang Shi, Yingjie Li, and Qiang Chen, Qiang Chen invited Qiuxiang Shi, Ying Jie Li to become a majority shareholder in Corporate Non-Defendant in consideration of $300,000 capital investment.

51.    During their meeting, Qiuxiang Shi and Yingjie Li pointed out that being Chinese nationals, they would need to have practical means of monitoring their investment or participating into the management of the Kirin Transportation.

52.    In response to their concern, Qiang Chen represented that Kirin Transportation would sponsor Qiuxiang Shi and Yingjie Li for an L-1 visa, which would permit them to travel to the United States and participate in the management and monitor the company operations.

53.    On November 28, 2017, Qiuxiang Shi and Yingjie Li entered into an agreement with Qiang Chen that Corporate Defendant would become a majority shareholder to Corporate Non-Defendant Kirin Transportation and Qiuxiang Shi signed the Shareholder Transfer Agreement on behalf of Corporate Defendant.

54.    Per the terms of the agreement, Qiang Chen a/k/a Frank Chen sold and transferred

51% (or 102 shares) of his ownership in Kirin Transportation to Corporate Defendant.

55.    Per the terms of the agreement, Qiang Chen a/k/a Frank Chen would simultaneously resign his current position at Corporate Non-Defendant and his position would be taken over by the representative of Corporate Defendant, Qiuxiang Shi a/k/a Qiu Xiang Shi.

56.    Per the terms of the agreement, Corporate Defendant, Qiuxiang Shi a/k/a Qiu Xiang Shi, and YINGJIE LI a/k/a Ying Jie Li would have the authority to assign executives, managers, and supervise Corporate Non-Defendants' operations.

57.    In or around April 10, 2018, Corporate Defendant, Qiuxiang Shi, and Yingjie Li exercised their control and management over Corporate Non-Defendant by appointing Individual Defendant WEI WANG a/k/a Maggie Wang as CEO.

58.    Specifically, in a letter dated April 10, 2018 executed by Qiuxiang Shi on behalf of herself and Corporate Defendant, addressed to WEI WANG a/k/a Maggie Wang, it was expressed that WEI WANG a/k/a Maggie Wang was appointed to become the Chief Executive Officer (CEO) of Corporate Non-Defendant and it was take effective immediately.

59.    Moreover, the letter explicitly specified that WEI WANG a/k/a Maggie Wang's duties as the CEO of Corporate Non-Defendant include the making of all decisions concerning management of personnel with the authority to hire or fire any other individuals or executives associated with Corporate Non-Defendant Kirin Transportation.

60.    Additionally, in the letter dated April 10, 2018, WEI WANG a/k/a Maggie Wang was directed to report to the board of directors for Corporate Defendant within a month of April 10, 2018 of the finances of Corporate Non-Defendant Kirin Transportation.

61.    In or around March 28, 2019, Corporate Defendant, Qiuxiang Shi, and Yingjie Li appointed Marriana Yuhua Song a/k/a Nancy Song as CEO of Corporate Non-Defendant as

replacement of Individual Defendant WEI WANG a/k/a Maggie Wang.

62.     Specifically, in a letter dated March 28, 2019 executed by Qiuxiang Shi on behalf of herself and Corporate Defendant, addressed to Marriana Yuhua Song a/k/a Nancy Song from Qiuxiang Shi and Corporate Defendant, it was expressed that Marriana Yuhua Song a/k/a Nancy Song was appointed to become the new Chief Executive Officer (CEO) of Corporate Non-Defendant Kirin Transportation and it was to take effect immediately.

63.     Moreover, the letter explicitly specified that Marriana Yuhua Song's duties as the CEO of Corporate Non-Defendant include the making of all decisions concerning management of personnel with the authority to hire or fire any other individuals or executives associated with Corporate Non-Defendant Kirin Transportation.

64.     Additionally, in the letter dated March 28, 2019, Marriana Yuhua Song was directed to report to the board of directors for Corporate Defendant within a month of March 28, 2019, of the finances of Corporate Non-Defendant.

65.     Moreover, upon information and belief, in or around September of 2019, QIUXIANG SHI a/k/a Qiu Xiang Shi and Individual Defendant YINGJIE LI a/k/a Ying Jie Li shortly came to the United States to meet with Kirin Transportation's emloyees and to arrange with the management and operation therein.

66.     At all relevant times, Corporate Defendant together with Corporate Non-Defendant together, had a gross annual revenue in the excess of five hundred thousand dollars ($500,000.00).

67.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Corporate Defendants and Corporate Non-Defendants.

**<u>Wage and Hour Claims</u>**

68.     On November 06, 2020, Plaintiff QIAN WANG a/k/a Sarah Wang and ZHANWEN CHI filed a lawsuit *Wang et al. v. Kirin Transportation Inc.,* 20-cv-05410(KAM) (VMS),

(E.D.N.Y.) (hereinafter "Wage and Hour Action"), seeking unpaid wages and overtime pay under FLSA and NYLL.

69.     On December 02, 2020, Plaintiff TIANDE WANG and on February 22, 2021, Plaintiff LU YANG and YA XU opted into the Wage and Hour Action.

70.     On June 08, 2021, Plaintiff TIANDE WANG; LU YANG; and YA XU; filed a lawsuit *Wang et al. v. Kirin Transportation Inc.,* 21-cv-03254 (KAM) (TAM) (E.D.N.Y.) (hereinafter "Retaliation Action"), seeking lost wages for retaliation against Plaintiffs under FLSA and NYLL.

71.     On June 23, 2021, a case was filed against the Plaintiffs in the action from Corporate Non- Defendants *Kirin Transportation Inc v. Qiang Wang et al.,* 714391/2021 (hereinafter "Corporate Non-Defendants Action").

72.     On August 24, 2021, Plaintiffs QIAN WANG a/k/a Sarah Wang; TIANDE WANG; LU YANG; YA XU; and ZHANWEN CHI filed their First Amended Complaint in the Retaliation Action.

73.     There are at least thirty-five or more (35+) employees working for Defendants, including around 30 drivers, and between 3 to 6 office employees.

74.     Defendants committed the following alleged acts knowingly, intentionally willfully, and maliciously against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

75.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

76.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

77.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

78.     Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

79.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day as required by NYLL §195(1)

80.     Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

81.     Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### *Plaintiff QIAN WANG a/k/a Sarah Wang*

82.     From on or about June 01, 2016 to December 02, 2020, Plaintiff QIAN WANG a/k/a Sarah Wang was employed to work as a Billing, Payroll, and Sanitation Worker at 142-04 Bayside Ave, Suite 7L, Flushing, NY 11354.

83.     From on or about June 01, 2016 to April 01, 2018, Plaintiff QIAN WANG a/k/a Sarah Wang's regular work schedule ran from 12:00 to 18:00 for six (6) hours and five (5) days a week for thirty (30) hours per week.

84.     From on or about April 02, 2018 to December 02, 2020, Plaintiff QIAN WANG a/k/a Sarah Wang worked from 10:00 to 18:00 for eight (8) hours per day for a total of forty (40) hours per week.

85.     However, during the second period, Plaintiff QIAN WANG a/k/a Sarah Wang would stay two (2) to three (3) days per week for one (1) to two (2) hours each time, for an additional three (3) to four (4) hours per week for a total of forty-three (43) hours per week.

86.     At all relevant times, Plaintiff QIAN WANG a/k/a Sarah Wang did not have a fixed time for lunch or dinner.

87.     From on on or about June 01, 2016 to December 31, 2018, Plaintiff QIAN WANG a/k/a Sarah Wang was supposed to be paid an hourly rate of twelve dollars ($12.00) per hour, but she was not paid for all hours worked.

88.     From on or about January 01, 2019 to December 31, 2019, Plaintiff QIAN WANG a/k/a Sarah Wang was supposed to be paid an hourly rate of thirteen dollars and fifty cents ($13.50) per hour, but she was not paid for all hours she worked.

89.     From on or about January 01, 2020 to November 03, 2020, Plaintiff QIAN WANG a/k/a Sarah Wang was supposed to be paid at an hourly rate of fifteen dollars ($15.00) per hour, but she was not paid for all hours she worked.

90.     Instead, at all relevant times, Plaintiff QIAN WANG a/k/a Sarah Wang was only paid up to forty (40) hours per workweek, even though she worked at least 42-43 hours per week from on or about April 02, 2018 to December 02, 2020.

91.     At all relevant times, Plaintiff QIAN WANG a/k/a Sarah Wang was not paid overtime pay for overtime work.

92.    At all relevant times, \ Plaintiff QIAN WANG a/k/a Sarah Wang was not informed of my hourly pay rate or any tip deductions toward the minimum wage.

93.    Throughout her employment, Plaintiff QIAN WANG a/k/a Sarah Wang was not provided a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowance claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, her native language.

94.    Throughout the course of her employment, Plaintiff QIAN WANG a/k/a Sarah Wang was not compensated at least one-and-one-half of her promised hourly wage for all hours worked above forty (40) in each workweek.

95.    By at least November 25, 2020, Defendants, MARRIANA YUHUA SONG a/k/a Nancy Song knew that Plaintiff QIAN WANG a/k/a Sarah Wang brought the Wage-and-Hour Action against Corporate and Individual Non-Defendants.

96.    On November 25, 2020, MARRIANA YUHUA SONG a/k/a Nancy Song told Plaintiff QIAN WANG a/k/a Sarah Wang that she already knew Plaintiffs QIAN WANG a/k/a Sarah Wang and Plaintiff ZHANWEN CHI was suing her and Corporate Non-Defendants, and that she had heard about the Wage-and-Hour Action from a lawyer friend of hers.

97.    On December 2, 2020 at about 11:45 AM, Plaintiff QIAN WANG a/k/a Sarah Wang received an email from Mark Xu, a coworker of hers at Kirin Transportation, using Kirin Transportation's company email account, informing her that she was temporarily suspended effective as of December 1, 2020.

98.    Mark Xu forwarded Plaintiff QIAN WANG a/k/a Sarah Wang her suspesnion email on behalf of MARRIANA YUHUA SONG a/k/a Nancy Song.

99.     At about the same time Plaintiff QIAN WANG a/k/a Sarah Wang received the forwarded email from Mark Xu, he texted her on WeChat to say she had been fired.

100.    Also on December 2, 2020, at about 6:00 PM, Defendant MARRIANA YUHUA SONG a/k/a Nancy Song and Mark Xu came to Plaintiff QIAN WANG a/k/a Sarah Wang's home to demand that Plaintiff QIAN WANG a/k/a Sarah Wang return certain company files that she had been using to work from home since about March of 2020.

101.    On that day, MARRIANA YUHUA SONG a/k/a Nancy Song called the police, and the police officers told Plaintiff QIAN WANG a/k/a Sarah Wang that she must return all the documents back to Defendant MARRIANA YUHUA SONG a/k/a Nancy Song in 30 minutes, for which Plaintiff QIAN WANG a/k/a Sarah Wang agreed.

102.    Still on December 02, 2020, Plaintiff QIAN WANG a/k/a Sarah Wang returned and confirmed that all the documents have been given back to MARRIANA YUHUA SONG a/k/a Nancy Song, whom importunated QIAN WANG a/k/a Sarah Wang for more.

103.    Specifically, MARRIANA YUHUA SONG a/k/a Nancy Song threatened that she was going to call the police again and file a counter complaint against Plaintiff QIAN WANG a/k/a Sarah Wang, if she did not return all the documents.

104.    On December 06, 2020, Plaintiffs TIANDE WANG and QIAN WANG a/k/a Sarah Wang filed their first motion for order to show cause ("first OTSC") in the Wage-and-Hour Action, seeking reinstating to their former position, temporarily restraining and enjoining Defendants from engaging in further retaliation against themselves and other employees.

105.    On or around December 12, 2020, Plaintiff QIAN WANG a/k/a Sarah Wang received a letter from Defendants, stating that Plaintiff QIAN WANG a/k/a Sarah Wang was terminated, and Defendants further threatened her in the letter that (1) accused her of not returning

all of the work-related documents; and (2) Defendant will retrive the unreturned documents through legal means and call the police to have her arrested.

106.    On February 25, 2021, Plaintiffs QIAN WANG a/k/a Sarah Wang, TIANDE WANG, YA XU, and LU YANG renewed their motion for injunctive reliefs ("second OTSC") in the Wage-and-Hour Action, supported by newly discovered facts.

107.    Following her termination, Defendants were still engaging in other improperly retaliatory activities against Plaintiffs QIAN WANG a/k/a Sarah Wang, TIANDE WANG, LU YANG, YA XU, and ZHANWEN CHI.

108.    On June 23, 2021, KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation filed the Corporate Non-Defendants Action against all Plaintiffs.

109.    Specifically, the counter-pleading of Corporate Non-Defendants alleges that Plaintiff QIAN WANG a/k/a Sarah Wang and other Plaintiffs in the Wage-and-Hour Action created a scheme to defraud Defendant's clients and acted in concert to steal Defendants' clients, and thus caused financial damages to Defendants.

110.    The pleading of Corporate Non-Defendants further alleges that Corporate Non-Defendants knew that Plaintiffs have made various claims against Defendants for unpaid wage and commissions purportedly owed. *Id*., at ¶33.

111.    All the accusations against Plaintiff QIAN WANG a/k/a Sarah Wang as stated in the letters and Defendants' pleading were false and groundless.

112.    Corporate Non-Defendants' retaliatory counter-pleading, however, had caused severely negative impact against Plaintiff QIAN WANG a/k/a Sarah Wang.

113.    Specifically, the above-mentioned intentional acts committed by Corporate Non-Defendants have caused extreme emotional distress, fear, and anxiety to Plaintiff QIAN WANG

a/k/a Sarah Wang, whose normal living were seriously interfered with.

### Plaintiff TIANDE WANG

114.    From on or about November 2015 through March 2017, and again from April 2019 through December 02, 200, Plaintiff TIANDE WANG was employed by Defendants to work as a commuter van driver.

115.    Kirin Transportation has a contract with several senior centers in Flushing to provide transportation for seniors between their homes and the senior centers.

116.    Plaintiff was assigned to drive fixed routes each day, transporting designated senior passengers between their homes and two of the senior centers.

117.    Throughout the course of employment with Defendants, Plaintiff's car was not for hire by individual members fo the general public.

118.    At all relevant times, Plaintiff TIANDE WANG usually worked five (5) days per week for 80% of the time, but occasionally, Plaintiff TIANDE WANG would work six (6) days per week for 20% of the time.

119.    Specifically, at all relevant times, Plaintiff TIANDE WANG's regular work schedule ran from:

    a.    07:00-16:00 for nine (9) hours per day for 80% and for five (5) days a week for 80% and six (6) days a week for 20% of the time;

    b.    07:00 to 17:00 for ten (10) hours per day for 10% and and for five (5) days a week for 80% and six (6) days a week for 20% of the time;

    c.    07:00 to 18:00 for eleven (11) hours per day for 10% and for five (5) days a week for 80% and six (6) days a week for 20% of the time; and

120.    In result, Plaintiff TIANDE WANG worked an average of forty-eight and point

thirty-six (48.36) hours each week.

121. At all relevant times, Plaintiff TIANDE WANG was promised a rate that is paid by the number of persons and the distance that he drove to the senior center.

122. On average, Plaintiff TIANDE WANG would receive around one hundred and twenty dollars ($120) per day and around three thousand and six hundred dollars ($3,600) per month, and the actual amount he supposed to be paid was depending upon how many customers or orders Plaintiff TIANDE WANG was assigned to drive on each workday, and the rate for each assignment or order was fixed, determined by and subject to adjustment by Defendants.

123. However, Plaintiff TIANDE WANG was not paid for all works he completed.

124. Specifically, according to incomplete figures, Defendants owe Plaintiff TIANDE WANG at least a roughly of $11,000 in unpaid wages.

125. Furthermore, during his employment with Defendants, Plaintiff TIANDE WANG had to pay car's maintenance and operations, and auto insurance out of his pocket as required by Defendants as follows:

    a. $100 per week (or $5,200 per year) in gasoline;

    b. around $300 ($50 each x 6) per year for car's maintenance;

    c. around $1,000 ($20 each x 50) per year to wash car;

    d. $3,700 per year for auto insurance;

    e. $600 (or $300 a year) biennial license fee and $200 (or $100 a year) biennial TLC inspection fee; and

    f. For a total of ten thousand and six hundred dollars ($10,600) a year.

126. Plaintiff TIANDE WANG was never being reimbursed for all the aforementioned expense and cost he incurred while he was driving for Defendants' business.

127. At all relevant times, Plaintiff TIANDE WANG was not paid overtime pay for overtime work.

128. At all relevant times, Plaintiff TIANDE WANG was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

129. Throughout the course of his employment, Plaintiff TIANDE WANG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and employee's gross and net wages for each pay day in Chinese, his native language.

130. Throughout the course of his employment, Plaintiff TIANDE WANG was not compensated at least one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

131. In or around November 25, MARRIANA YUHUA SONG a/k/a Nancy Song notified Plaintiff WANG that she knew that Plaintiff TIANDE WANG's daughter, QIAN WANG a/k/a Sarah Wang ("Sarah Wang") initiated the Wage-and-Hour Action.

132. On about December 02, 2020, Plaintiff TIANDE WANG received an email, indicating that his daughter, Sarah Wang, had been suspended.

133. Since December 02, 2020, Plaintiff TIANDE WANG was still owed his pay for November of 2020, and he learned that other drivers working for Defendants had received their paycheck for that month, except him.

134. On December 03, 2020, Plaintiff TIANDE WANG received an email saying he was suspended because of some false accusations in violation of company's policies.

135. Since then, Plaintiff TIANDE WANG has never been reinstated to his position as

a commute van driver for Defendants.

136.    On December 06, 2020, Plaintiff TIANDE WANG and Sarah Wang filed their first motion for order to show cause ("first OTSC") in the Wage-and-Hour Action, seeking reinstating to their former position, temporarily restraining and enjoining Defendants from engaging in further retaliation against themselves and other employees.

137.    On December 13 or 14, 2020, Plaintiff LU YANG called Plaintiff TIANDE WANG, telling him that Marriana Yuhua Song asked him to pass a message asking Plaintiff TIANDE WANG to withdraw the Wage and Hour Action, and otherwise Defendants were going to sue him and he would have to hire an attorney and spend tens of thousands of dollars to defend.

138.    During the phone call, Plaintiff LU YANG said that Marriana Yuhua Song warned that if she were to go to court, she would render the company paying for her legal fees but Plaintiff alone would have to put his own money on legal fees, and she was much more powerful.

139.    Plaintiff TIANDE WANG did not succumb to Defendants' unreasonable demand and remarkable threat.

140.    On or around December 14, 2020, Plaintiff TIANDE WANG received a letter via mail on behalf of Defendants, informing his suspension, in which listed a couple of false accusations in violation of the company's internal policies.

141.    On February 15, 2021, Sarah Wang told Plaintiff TIANDE WANG that Nancy Song had already prepared a release and settlement agreement and promised that whoever signed this agreement will be paid with 30% of all the wages owed to them, provided that the employees must sign it for the pay.

142.    On February 25, 2021, Plaintiffs TIANDE WANG, YA XU, LU YANG, and Sarah Wang renewed their motion for injunctive reliefs ("second OTSC") in the Wage-and-Hour Action,

supported by newly discovered facts.

143.   After his termination, Defendants were still engaging in other improperly retaliatory activities against all Plaintiffs.

144.   In or around May of 2021, Plaintiff TIANDE WANG began receiving calls and messages from his current customers who were former clients or "members" of the Defendants and who also received letters written on behalf of Kirin Transportation stating that Defendants had filed another lawsuit against Plaintiff TIANDE WANG for the cause of his engagement in the alleged "insurance fraud" and "stealing customers away from Kirin Transportation in violation of the company's internal policies."

145.   All the above accusations in these letters were false and meritless.

146.   These letters, however, had caused severely negative impact against Plaintiff TIANDE WANG's current job as a commute van driver, because his customers were very anxious about being forced into any disputes or lawsuit.

147.   In fact, Plaintiff TIANDE WANG is on the verge of losing customers and his job for making living due to Defendants' aggravated misconducts that seriously destroyed his established reputation and trust with his current customers.

148.   Consequently, Plaintiff TIANDE WANG is currently suffering monetary losses due to reduced customers and Defendants' continuously intentional misconducts.

149.   Specifically, upon information and belief, after receiving letters from Kirin Transportation and learning the lawsuit filed against Plaintiffs, approximately 15 customers no longer ride car and accept services from Plaintiff TIANDE WANG, for which directly caused approximate $3,200 monetary losses per month.

150.   Moreover, above-mentioned intentional misconducts committed by Defendants

have caused extreme emotional distress, fear, and anxiety to Plaintiff TIANDE WANG, whose normal living were seriously interfered with.

### *Plaintiff LU YANG*

151.    From in or about 2015 through March of 2021, Plaintiff LU YANG was employed by Defendants to work as a commuter van driver.

152.    Kirin Transportation has a contract with several senior centers in Flushing to provide transportation for seniors between their homes and the senior centers.

153.    Plaintiff LU YANG was assigned to drive fixed routes each day, transporting designated senior passengers between their homes and two of the senior centers.

154.    Throughout the course of his employment with Defendants, Plaintiff's car was not for hire by individual members for the general public.

155.    From in or about 2015 to March 01, 2021, Plaintiff LU YANG's regular work schedule ran as follows:

    a.    Monday through Saturday for six (6) days per week from 06:00 to 17:00 for eleven (11) hours a day for 50% of the time with Sunday off; and

    b.    Monday through Saturday for six (6) days per week from 09:00 to 17:00 for six (6) hours a day for 50% of the time with Sunday off.

156.    In result, Plaintiff LU YANG worked an average of fifty-one (51) hours a week.

157.    At the very beginning of my employment, Plaintiff LU YANG was supposed to be paid once every one and half (1.5) month between $3,000 and $12,000 each time, depending upon how many customers he was assigned to drive, and the rate for each assignment/order was fixed, determined by and subject to adjustment by Defendants.

158.    In or around March of 2019, Corporate Defendant, Corporate Non-Defendant, Individual Defendant YINGJIE LI a/k/a Ying Jie Li and WEI WANG a/k/a Maggie Wang, and QIUXIANG SHI a/k/a Qiu Xiang Shi took over the business from QIANG CHEN a/k/a Frank Chen. Nancy Song, the Defendants' newly appointed CEO promised to pay Plaintiff LU YANG once every two (2) weeks, but always delayed.

159.    After the new boss took over the business, Plaintiff LU YANG was supposed to be paid once every two weeks between $4,000 and $5,000 each time, depending upon how many customers he was assigned to drive, and the rate for each assignment/order was determined by and subject to adjustment by Defendants.

160.    However, throughout the course of employment, Defendants had Plaintiff LU YANG's wage delayed and he was not paid for all works he completed.

161.    Defendants paired Plaintiff LU YANG with Plaintiff YA XU, who primarily worked in marketing department to promote Defendants' services.

162.    At all relevant times, Defendants supposed to pay Plaintiff LU YANG in terms of 75% of the gross profits earned from contracted senior centers for services he rendered; whenever he received that 75% pay, Plaintiff LU YANG was required to split half or 50% of my pay to share with Plaintiff YA XU.

163.    Specifically, since January 2019, the Defendants began to owe Plaintiff LU YANG money. According to incomplete figures, in January of that year, Defendants owed Plaintiff LU YANG $10,706.40; as of February 2019, they owed him $7,739.84; and as of March 2019, Defendants owed him $137.76, and never paid him back until he was fired on 2021.

164.    At all relevant times, Plaintiff LU YANG had to pay car's maintenance and operations, and auto insurance out of his pocket as required by Defendants as follows:

a. $80 to $100 per week (or $4160 to $5200 per year) in gasoline;

a. Around $300 ($50 each x 6) per year for maintenance;

b. $3,400 per year for auto insurance;

c. $600 (or $300 a year) biennial license fee and $200 (or $100 a year) biennial TLC inspection fee;

d. $400 per year DMV Registration fee; and

e. For a total of eight thousand six hundred and sixty dollars to nine thousand to nine thousand seven hundred dollars ($8,660-$9,700) a year.

165. Defendants never reimbursed Plaintiff LU YANG for all the aforementioned expense and cost he incurred while he was driving for Defendants' business.

166. At all relevant times, Plaintiff LU YANG was not paid overtime pay for overtime work.

167. At all relevant times, Plaintiff LU YANG was not informed of his hourly pay rate or any tip deductions toward the minimum wage.

168. Throughout the course of his employment, Plaintiff LU YANG was not given a statement with my weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and employee's gross and net wages for each pay day in Chinese, Plaintiff LU YANG's native language.

169. Throughout the course of his employment, Plaintiff LU YANG was not compensated at least one-and-one-half of his promised hourly wage for all hours worked above forty (40) in each workweek.

170. On or around December 20, 2020, Nancy Song met Plaintiff LU YANG at her

office and tried know who had sued the Defendants in the Wage-and-Hour Action. Nancy Song said whoever sued the company would not be paid, and she will prepare a release and settlement agreement for the employees who were owed unpaid wages to sign and to get pay.

171.    On or around January of 2021, Nancy Song met Plaintiff LU YANG again and told him that the agreement was ready, asked Plaintiff LU YANG to sign it to get his pay, and she further promised to pay by February 12, 2021 up to 30% of the total amount that Plaintiff LU YANG was owed, provided that he must sign the release agreement.

172.    On or around February 08 or 09, 2021, Plaintiff LU YANG called Nancy Song, verifying if he had chance to be paid owed money in what time and when would he get his pay. Nancy Song reiterated the promise she made earlier in or around January of 2021.

173.    On February 22, 2021, Plaintiff LU YANG and YA XU stopped by the Defendants' office and obtained a hard copy of the agreement.

174.    On the same day, Plaintiff LU YANG opted into the Wage-and-Hour Action.

175.    After deep consideration, Plaintiff LU YANG did not sign the release and settlement agreement nor did he recover any owed wages from Defendants.

176.    Sometimes between February 25, 2021 and May of 2021 and following his refusal to sign the agreement, Plaintiff LU YANG was fired by Defendants.

177.    Plaintiff LU YANG was fired because of his participation in the Wage-and-Hour Action and refusal to sign off the release and settlement agreement.

178.    After his termination, Defendants were still engaging in other improperly retaliatory activities against all Plaintiffs.

179.    In or around May of 2021, Plaintiff LU YANG began receiving calls from his current customers who were former clients or "members" of the Defendants and who also received

letters written on behalf of Kirin Transportation stating that Defendants had filed another lawsuit against Plaintiff LU YANG for the cause of his engagement in the alleged "insurance fraud" and "stealing customers away from Kirin Transportation in violation of the company's internal policies."

180.    All the accusations listed in these letters were false and meritless.

181.    These letters, however, had caused severely negative impact against Plaintiff LU YANG's current job as a commute van driver for living, because his customers were anxious about being forced into any disputes or lawsuit.

182.    In fact, Plaintiff LU YANG is currently on the verge of losing his customers and his job for making living due to Defendants' aggravated retaliatory malfeasances that seriously destroyed his established reputation and trust with his current customers.

183.    Consequently, Plaintiff LU YANG is suffering monetary losses due to reduced customers and Defendants' continuously intentional misconducts.

184.    Specifically, upon information and belief, after receiving letter from Defendants and learning the lawsuit filed against Plaintiffs, approximately between 7 and 8 customers no longer accept service from Plaintiff LU YANG, for which caused approximate $2,500 monetary damages per month.

185.    Moreover, above-mentioned intentional misconducts committed by Defendants have caused extreme emotional distress, fear, and anxiety to Plaintiff LU YANG, whose normal living had been seriously interfered with.

***Plaintiff YA XU***

186.    From on or about 2017 through March of 2021, Plaintiff YA XU was employed by Defendants to work as a Commuter Van Driver and also in marketing department worker at 142-

04 Bayside Ave, Suite 7L, Flushing, NY 11354.

187.    Kirin Transportation has a contract with several senior centers in Flushing to provide transportation for seniors between their homes and the senior centers.

188.    At all relevant times, her primary duty was to promote Defendants' commuter van services at senior centers to those elder people, and she also need to drive whenever the Defendants was in shortage of drivers.

189.    Plaintiff YA XU was assigned to drive fixed routes each day, transporting designated senior passengers between their homes and two of the senior centers.

190.    Throughout the course of her employment with Defendants, Plaintiff's car was not for hire by individual members for the general public.

191.    From in or about 2017 to March 01, 2021, Plaintiff YA XU's regular work schedule ran from 08:00-16:00 for six (6) days a week with Sunday off.

192.    In result, Plaintiff YA XU worked average of forty-eight (48) hours a week.

193.    Throughout the course of employment, Defendants paired Plaintiff YA XU with Plaintiff LU YANG, who primarily worked as a commuter van driver.

194.    At all relevant times, Defendants supposed to pay Plaintiff LU YANG and Plaintiff YA XU 75% of the gross profits earned from contracted senior centers for the services we rendered; we were required by Defendants to split and share half of the pay with Plaintiff YANG.

195.    Before 2021, Plaintiff YA XU was promised to receive 10% bonus of the businesses Plaintiff YA XU promoted for Kirin Transportation while Plaintiff YA XU was working as marketing worker. Since 2021, the 10% share was cancelled by Defendants.

196.    Moreover, throughout the course of employment, Defendants always had her pay delayed and Plaintiff YA XU was not paid for all works she completed.

197.    At all relevant times, Plaintiff YA XU had to pay car's maintenance and operations, and auto insurance out of my pocket as required by Defendants as follows:

      a.    $80 to $100 per week (or $4160 to $5200 per year) in gasoline;

      b.    Around $300 ($50 each x 6) per year for maintenance;

      c.    $3,400 per year for auto insurance;

      d.    $600 (or $300 a year) biennial license fee and $200 (or $100 a year) biennial TLC inspection fee;

      e.    $400 per year DMV Registration fee; and

      f.    For a total of eight thousand six hundred and sixty dollars to nine thousand to nine thousand seven hundred dollars ($8,660-$9,700) a year.

198.    Defendants never reimbursed Plaintiff YA XU for all the aforementioned expense and cost she incurred while she was driving for Defendants' business.

199.    At all relevant times, Plaintiff YA XU was not paid overtime pay for overtime work.

200.    At all relevant times, Plaintiff YA XU was not informed of her hourly pay rate or any tip deductions toward the minimum wage.

201.    Throughout my employment, Plaintiff YA XU was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and employee's gross and net wages for each pay day in Chinese, her native language.

202.    Throughout my employment, Plaintiff YA XU was not compensated at least one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

203.    Nancy Song learned the Wage-and-Hour Action between late November and early

December, at the latest.

204.    On or around February 08 or 09, 2021, Plaintiff LU YANG told Plaintiff YA XU that a release and settlement agreement was prepared by Nancy Song, and she promised to pay 30% of the total amount owed to employees, but employees must sign it to get pay.

205.    On February 22, 2021, Plaintiff LU YANG and YA XU stopped by the Defendants' office and obtained a hard copy of the agreement.

206.    On the same day, Plaintiff YA XU opted into the Wage-and-Hour Action.

207.    After deep consideration, Plaintiff YA XU did not sign the release and settlement agreement nor did she recover any owed wages from Defendants.

208.    Sometimes between February 25, 2021 and May of 2021 and following her refusal to sign the agreement, Plaintiff YA XU was fired by Defendants.

209.    Plaintiff YA XU was fired because of her participation in the Wage-and-Hour Action and refusal to sign the release and settlement agreement.

210.    After her termination, Defendants were still engaging in other improperly retaliatory activities against all Plaintiffs.

211.    In or around May of 2021, Plaintiff YA XU began receiving calls and text messages from her current customers who were former clients or "members" of the Defendants and who also received letters written on behalf of Kirin Transportation stating that Defendants had filed another lawsuit against Plaintiff YA XU for the cause of her engagement in the alleged "insurance fraud" and "stealing customers away from Defendants in violation of the company's internal policies."

212.    All the accusations listed in these letters forwarded to Plaintiffs YA XU were false and meritless.

213.    These letters, however, had caused severely negative impact against Plaintiff YA

XU current job as a commute van driver, because her customers were anxious about being forced into any disputes or lawsuit.

214.    Specifically, above-mentioned intentional misconducts committed by Defendants have caused extreme emotional distress, fear, and anxiety to Plaintiff YA XU, whose normal living had been seriously interfered with.

**Plaintiff ZHANWEI CHI**

215.    From in or around November 01, 2016 through March 31, 2019, Plaintiff ZHANWEN CHI was employed by Defendants to work as a commuter van driver.

216.    Kirin Transportation has a contract with several senior centers in Flushing to provide transportation for seniors between their homes and two of the senior centers with which Kirin Transportation contracted, located at: 6-36 Prince Street, Flushing, NY; and 33-37 Farrington Street, Flushing, NY.

217.    Plaintiff ZHANWEN CHI was assigned to drive fixed routes each day, transporting designated senior passengers between their homes and two of the senior centers.

218.    Throughout the course of his employment with Defendants, Plaintiff's car was not for hire by individual members for the general public.

219.    At all relevant times, Plaintiff ZHANWEN CHI follows a fixed schedule, from 06:00 to 16:00, and a round-trip route from the homes of the senior citizens to the senior center.

220.    Specifically, at all relevant times, Plaintiff ZHANWEN CHI's regular work schedule ran from:

    a.    06:00 to 16:00 for ten (10) hours a day, for 5 days a week for 90% of the time;

    b.    06:00 to 16:00 for ten (10) hours per day, for 6 days a week for 10% of the time; and

    c.   for an average of fifty-one (51) hours each week.

221.    Between 10:30 and 12:30, Plaintiff ZHANWEN CHI was required to stand by and drive seniors to go to the hospital if the customers are in need of medical attention.

222.    At all relevant times, Plaintiff ZHANWEN CHI did not have a fixed time for lunch or for dinner.

223.    From on or about November 01, 2016 to March 01, 2019, Plaintiff ZHANWEN CHI was promised a rate that is paid by the number of persons and the distance that he drove to the senior center.

224.    By this algorithm, Plaintiff ZHANWEN CHI received between $150 to $200 if all persons were driven to the senior center, and sometimes receiving only $100 per day, depending upon how many customers he was assigned to drive, and the rate for each assignment or order was fixed, determined by and subject to adjustment by Defendants.

225.    On average, Plaintiff ZHANWEN CHI would receive one hundred thirty dollars ($130) per day.

226.    However, Plaintiff ZHANWEN CHI was not paid for all works I completed.

227.    Specifically, according to incomplete figures, Plaintiff ZHANWEN CHI was owed at least $9960 in unpaid wages.

228.    Furthermore, during Plaintiff ZHANWEN CHI's employment with Defendants, he had to pay car's maintenance and operations, and auto insurance as follows:

    a.   around $40 per week (or $2,080 per year) out of pocket in gasoline;

    b.   around $50 per year to change the oil of the car;

    c.   around $20 for 2-3 times each month (or $600 per year) to wash car;

    d.   $3700 per year for auto insurance;

e.    $600 of license fee and $128 for exchanging business license to the TLC biannually; and

f.    for a total of six thousand seven hundred and ninety-four dollars ($6,430) a year.

229.    Throughout the course of his employment, Plaintiff ZHANWEN CHI also had to pay 4 traffic violations ticket for a total of between $400-$500 when he drove seniors to the senior center at 36-36 Prince Street, Flushing, NY.

230.    At all relevant times, Plaintiff ZHANWEN CHI drove an average of:

a.    100 miles per day on Tuesdays, Thursdays, and Fridays,

b.    60-70 miles a day on Mondays and Wednesdays,

c.    20-30 miles a day on Saturdays while working for Kirin Transportations.

231.    Kirin Transportation never reimbursed Plaintiff ZHANWEN CHI for all the aforementioned expense and cost he incurred while he was driving for Defendants' business.

232.    At all relevant times, Plaintiff ZHANWEN CHI was not paid overtime pay for overtime work.

233.    At all relevant times, Plaintiff ZHANWEN CHI was not informed of his hourly pay rate or any tip deductions toward the minimum wage.

234.    Throughout the course of his employment, Plaintiff ZHANWEN CHI was not given a statement with my weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, his native language.

235.    Throughout the course of his employment, Plaintiff ZHANWEN CHI was not compensated at least at one-and-one-half my promised hourly wage for all hours worked above

forty (40) in each workweek.

236.    As part of his employment with Defendants, Plaintiff ZHANWEN CHI was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

237.    By at latest November 25, 2020, Defendants and MARRIANA YUHUA SONG a/k/a Nancy Song knew that Plaintiff ZHANWEN CHI and other Plaintiffs brought the Wage-and-Hour Action against Defendants.

238.    On June 23, 2021, Corporate Non-Defendant KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation filed a lawsuit against all Plaintiffs.

239.    Specifically, the pleading of Defendant's Action alleges that Plaintiff ZHANWEN CHI threatened to murder the son of QIUXIANG SHI a/k/a Qiu Xiang Shi and to inflict physical harm upon other Defendants' employees.

240.    The pleading further alleges that Defendants knew that Plaintiffs have made various claims against Defendants for unpaid wage and commissions purportedly owed. *Id.*, at ¶33.

241.    All the accusations against Plaintiff ZHANWEN CHI were false and groundless.

242.    These letters and the following action, however, had caused severely negative impact against Plaintiff ZHANWEN CHI.

243.    Specifically, the above-mentioned intentional acts committed by Defendants have caused extreme emotional distress, fear, and anxiety to Plaintiff ZHANWEN CHI, whose normal living had been seriously interfered with.

244.    Upon information and belief, Defendants were continuously discouraging, dissuading, and intimidating their employees who intend to sue them from engaging in protected converted activities, and blatantly interfering with the Court's right and responsibility to manage the Wage-and-Hour Action and related actions.

245.    Defendants committed the foregoing acts knowingly, intentionally, willfully, and maliciously against the Plaintiffs, the Collective, and the Class.

## COLLECTIVE ACTION ALLEGATIONS

246.    Plaintiffs brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgement in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective").

247.    Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees employed by Defendants over the three (3) years preceding the filing of this Complaint, through entry of judgment in this, who either opted into the Wage-and-Hour Action or took other protected activities, were laid off or being retaliated in other means from in or about November of 2020, and were not rehired and reinstated to their prior positions (the "Collective").

## CLASS ACTION ALLEGATIONS

248.    Plaintiff brings their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week. (the "Class").

249.    Plaintiffs brings their state-law claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt employees

employed by Defendants over the three years preceding the filing of this Complaint, through entry of judgment in this case, who either opted into the Wage-and-Hour Action or took other protected activity, were laid off since November 2020, and were not rehired or were rehired with reduced hours or pay (the "Class").

250.    The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under said Rule 23.

### *NUMEROSITY*

251.    The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

252.    Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

### *COMMONALITY*

253.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual members, including:

a.    Whether Defendants employed the Class members within the meaning of New York law;

b.    Whether Class members are owed unpaid wages;

c.    Whether Class members are not paid at least the hourly minimum wage for each hour worked;

d.    Whether Class members are entitled to and paid overtime at their promised hourly rate under NYLL;

e.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Class members spread-of-hour pay as required by NYLL;

f.    Whether Class members are required by Defendants to provide and maintain tools of the trade on Defendants' behalf at their own cost;

g.    Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods; whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Class members' start of employment and/or timely thereafter;

h.    Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Class members on each payday;

i.    Whether the Class members engaged in protected activity under the NYLL;

j.    Whether the Class members were laid off since November 2020;

k.    Whether the Class members were not rehired or were rehired with reduced hours or pay whether the Class members were paid for overtime hours at rates one and one-half times their regular rates; and

l.    At what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members for their work?

*TYPICALITY*

254.    Plaintiffs' claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

255.    All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation and of retaliation for participating or engaging into protected activity.

256.    Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

257.    Plaintiffs and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

### ADEQUACY

258.    Plaintiffs are fairly and adequately able to protect the interests of the Class and have no interests antagonistic to the Class.

259.    Plaintiffs are represented by the attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

### SUPERIORITY

260.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

261.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

262.    Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

263.    Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court

and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

264.    The prosecution of separate actions by individual Class members would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

265.    The issues arising in the instant action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

266.    Moreover, upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.

267.    Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

268.    Likewise, former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

269.    Class actions provide class members who are not named in the complaint a degree of anonymity allowing for the vindication of their rights while eliminating or reducing these risks.

## STATEMENTS OF CLAIMS

### COUNT I.    [Violations of the Fair Labor Standards Act—Unpaid Wages Brought on behalf of the Plaintiff TIANDE WANG, LU YANG, YA XU, ZHANWEN CHI and the FLSA Collective]

270.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

271.    The FLSA provides that no employer engaged in commerce shall employ a covered

employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

272.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

273.    Defendants' failure to pay Plaintiffs TIANDE WANG, LU YANG, YA XU, ZHANWEN CHI and the FLSA Collective their ovetime pays violated the FLSA.

274.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

275.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

276.    Defendants willfully and maliciously failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

277.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week

when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT II.    [Violations of the New York Labor Law—Unpaid Wages Brought on behalf of the Plaintiff TIANDE WANG, LU YANG, YA XU, ZHANWEN CHI and Rule 23 Class]

278.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

279.    Section 191.1, Subsection (d) of the NYLL provides that "a clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."

280.    Defendants unlawfully withheld at least a roughly of $11,000 in wages from Plaintiff TIANDE WANG's pay, of $18,000 in wages from Plaintiff LU YANG and Plaintiff YA XU's pay, and of $9960 in wages from Plaintiff ZHANWEN CHI's pay

281.    Defendants have continued to withhold Plaintiffs' pay despite their complaints and requests to be paid.

282.    Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

283.    Despite Plaintiffs' complaints and Defendants' knowledge of the provisions of the NYLL, Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay Plaintiffs their wages timely.

### COUNT III [Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage Brought on behalf of the Plaintiffs and the FLSA Collective]

284.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

285.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

286.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

287.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT IV. [Violation of New York Labor Law—Failure to Pay Minimum Wage Brought on behalf of Plaintiffs and Rule 23 Class]

288.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

289.    At all relevant times, Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

290.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

291.    Defendants knowingly, willfully, and maliciously violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

GDass YChen

292.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§ 190 et seq., §§ 650 et seq., and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

### COUNT V. [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiffs and the FLSA Collective]

293.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

294.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

295.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

296.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

297.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

298.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

299.    Defendants willfully and maliciously failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

300.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### COUNT VI. [Violation of New York Labor Law—Failure to Pay Overtime Brought on behalf of Plaintiffs and Rule 23 Class]

301.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

302.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

303.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

304.    Defendants' failure to pay Plaintiffs their overtime wages violated the NYLL.

305.    Defendants' failure to pay Plaintiffs was not in good faith.

### COUNT VII. [Violation of New York Labor Law—Failure to Pay Spread of Time Pay Brought on behalf of Plaintiffs and Rule 23 Class]

306.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

307.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, et seq., and §§ 650, et seq., and New York State Department of Labor regulations § 146-1.6.

308.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

**COUNT VIII [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiffs and Rule 23 Class]**

309.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

310.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

311.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

312.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

313.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

### COUNT IX [Violation of New York Labor Law—Failure to Provide Wage Statements Brought on behalf of Plaintiffs and Rule 23 Class]

314.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

315.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

316.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

317.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

### COUNT X. [Defendants' Failure To Pay To Plaintiff TIANDE WANG, LU YANG, YA XU, and ZHANWEN CHI Working "On The Road" Brought on Behalf of Plaintiff TIANDE WANG, LU YANG, YA XU, ZHANWEN CHI and the Class]

318.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

319.    Throughout the relevant period, Defendants required their delivery experts to maintain and provide a safe, functioning, insured and legally-operable automobile to drive seniors to and from.

320.    Throughout the relevant period, Defendants required their delivery experts to bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.

321.    For 2016, the IRS Standard Mileage Rate is $0.540 per mile.

322.    For 2017, the IRS Standard Mileage Rate is $0.535 per mile.

323.    For 2018, the IRS Standard Mileage Rate is $0.545 per mile.

324.    For 2019, the IRS Standard Mileage Rate is $0.580 per mile.

325.    For 2020, the IRS Standard Mileage Rate is $0.575 per mile.

326.    For 2021, the IRS Standard Mileage Rate is $0.560 per mile.

### COUNT XI.    [VIOLATION OF SECTION 215(A)(3) OF THE FLSA— RETALIATION FOR PROTECTED ACTIVITY BROUGHT ON BEHALF OF THE PLAINTIFFS, THE COLLECTIVE, AND THE CLASS]

327.    Plaintiffs re-allege and incorporate by reference all preceding statements as though fully set forth herein.

328.    The anti-retaliation provision of Fair Labor Standards Act (FLSA) provides, in part, that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter" 29 U.S.C. § 215(a)(3).

329.    Plaintiffs have been subjected to adverse employment actions, including, termination, denial of paying owed wages, and dissemination of false accusations to their customers to tarnish their reputation and obstruct their current employment "because of" their engagement in protected participation by enforcing their rights under the FLSA and filing a lawsuit

against Defendants for failure to compensate them for all hours worked and for unpaid overtime.

330.    Retaliation has been a "motivating" factor in the adverse employment decisions made against Plaintiffs.

331.    The Defendants were employers within the meaning of the FLSA, because "employer" as defined by Section 203(d) of the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee" and Defendants were self-consciously acting in the interests of the Association's employer members to protect them from meritorious lawsuits.

332.    Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional amount as liquidated damages."

## COUNT XII.   VIOLATION OF SECTION 215.1(A)(III) OF THE NYLL— RETALIATION FOR PROTECTED ACTIVITY BROUGHT ON BEHALF OF THE PLAINTIFFS, THE COLLECTIVE, AND THE CLASS

333.    Plaintiffs re-allege and incorporate by reference all preceding statements as though fully set forth herein.

334.    Section 215.1(a)(iii) of the NYLL provides that "[n]o employer or his agent, or the officer or agent of any corporation, partnership or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee… because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter."

335.    Plaintiffs have been subjected to adverse employment actions, including, termination, denial of paying owed wages, and dissemination of false accusations to their

customers to tarnish their reputation and obstruct making living "because of" their engagement in protected participation by enforcing their rights under the NYLL and filing a lawsuit against Defendants for failure to compensate them for all hours worked and for unpaid overtime.

336.    Section 215.2(a) of the NYLL provides that "[t]he court shall have jurisdiction to restrain violations of this section, within two years after such violation, regardless of the dates of employment of the employee, and to order all appropriate relief, including enjoining the conduct of any person or employer; ordering payment of liquidated damages, costs and reasonable attorneys' fees to the employee by the person or entity in violation…. Liquidated damages shall be calculated as an amount not more than twenty thousand dollars."

## **DEMAND FOR TRIAL BY JURY**

337.    Pursuant to Rules 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to

GDass YChen                                                          Page **50** of **53**

assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law to Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty-five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle expenses incurred and expended by Plaintiffs on Defendants' bequest and behalf;

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)      An award of liquidated and/or punitive damages as a result of Defendants' willful and malicious failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law.

l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)     The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      An award of lost wages, and liquidated damages equal to lost wages, due to Plaintiffs and the Collective under FLSA;

p)      An award of lost wages, and liquidated damages equal to lost wages up to $20,000.00, due to Plaintiffs and the Class under NYLL;

q)      An award of punitive damages for Defendants' willful retaliation against Plaintiffs and malicious dissemination of false accusations and interruption of their current employment.

r)      An award of prejudgment interest at a rate of 9 percent *per annum* pursuant to Section 5004 of the New York Civil Practice Law and Rules;

s)      An award of reasonable attorneys' fees and costs incurred;

t)      An Order that, to the extent that any amounts remain unpaid upon the expiration of 90 days following the issuance of judgment, or 90 days after expiration of the time to appeal, no appeal then being pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, as required by Section 198, Paragraph 4 of the NYLL

u)      Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following the issuance of judgment, or ninety days after expiration of the time to appeal and

no appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL §198(4); and

      v)      Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.

Dated: Flushing, NY
December 30, 2021

                         TROY LAW, PLLC
                         *Attorneys for the Plaintiffs, proposed FLSA*
                         *Collective and potential Rule 23 Class*

                         /s/ John Troy
                         John Troy (JT 0481)
                         Aaron Schweitzer (AS 6369)